# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4794 | **DATE** | 1/24/2002 |
| **CASE TITLE** | LARRY MINTER, SR. vs. CSX TRANSPORTATION, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant CSX Transportation's motion to dismiss [6-1] is granted and defendant United Transportation Union's motion to dismiss [7-1] is granted. Any pending motions or dates are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JAN 2 5 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 13 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JAN 24 PM 5:48 | JAN 2 5 2002 date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARRY MINTER, SR., | Case No. 01 C 4794 |
| Plaintiff, | Hon. John W. Darrah |
| v. | |
| CSX TRANSPORTATION, INC. and UNITED TRANSPORTATION UNION, | DOCKETED |
| Defendants. | JAN 2 5 2002 |

## MEMORANDUM OPINION AND ORDER

Defendants, CSX Transportation, Inc. and United Transportation Union, move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff, Larry Minter, Sr.'s, complaint. For the reasons set forth below, Defendant CSX Tranportation, Inc.'s Motion to Dismiss [6-1] and United Transportation Union's Motion to Dismiss [7-1] are granted.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).



1

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim'" [citation omitted], he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

Plaintiff, Larry Minter, Sr., ("Minter"), has filed a single-count complaint against Defendants, CSX Transportation, Inc. ("CSXT") and the United Transportation Union ("the Union"), alleging a federal claim for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. For purposes of this Motion to Dismiss, the following allegations are taken as true.

Minter was hired by CSXT on June 24, 1970, as a switchman. Minter worked at CSXT for almost twenty-eight years with a clean disciplinary record. At the time of his resignation, he was receiving treatment for a substance abuse disorder through the CSXT Employment Assistance Program ("EAP").

On February 16, 1998, Minter called Joe Chodkiewisz ("Chodkiewisz"), his EAP counselor, for help. Minter felt anxious and unsettled and felt he needed inpatient treatment. Chodkiewisz promised that someone from the EAP would come to Minter's home the next morning to take Minter to a treatment facility.

Minter became confused, unable to concentrate and depressed. Later that day, with his symptoms unchanged, Minter drove to the CSXT office and informed Sharon,

2

the trainmaster's secretary, that he wanted to resign. Sharon told Minter to write out his resignation. Sharon typed up Minter's resignation. Minter signed the note and gave it to Sharon. Sharon told Minter that she would give the note to Mike Riley ("Riley"), the trainmaster.

On February 18, 1998, Minter's symptoms lessened, and he called Riley and told Riley that he wanted to rescind his resignation. Riley told him that the letter had already been faxed to the main office in Jacksonville but that Riley would try to recall the letter. Since that time, no one representing CSXT has communicated with Minter regarding his request to rescind the resignation.

On February 18, 1998, Minter contacted the Union local chairperson, Lesniewski, to seek the union's help. Lesniewski checked with CSXT and learned that Minter's name had been removed from the company's seniority list. Lesniewski also contacted the Union general chair, J.T. Reed, who told him that Article 34 of the collective bargaining agreement ("CBA") barred rescission of Minter's resignation. Lesniewski then told Minter that the Union would not assist him.

On February 18, 1998, Minter sought treatment from Dianne Glenn, RNC, CADC. Minter was extremely anxious, with rapid speech and a low frustration tolerance. Minter told her that he had given up his job, was depressed, unable to concentrate and very confused.

On March 26, 1999, Minter received a notice from the Railroad Retirement Board that he qualified for disability benefits beginning February 17, 1998. On January 27, 1999, Minter, by his attorney, wrote to CSXT to request that his resignation be rescinded and that, upon release by his doctors, he be reinstated with full seniority.

On November 1, 1999, Minter received a letter from the Union. The Union's letter stated that Minter's request was barred by Article 34 of the CBA, which reads, in relevant part, "Yardmen or switchtenders leaving the service of the Company of their own accord forfeit all seniority rights and shall not be reinstated." Accordingly, the Union stated that it would not support Minter's reinstatement request.

On December 20, 1999, Minter, by his attorney, wrote J.T. Reed suggesting that the ADA prevailed over Article 34 and that the Union's refusal to support his reinstatement might violate the ADA. In a letter dated December 30, 1999, Reed wrote R.D. Hiel, Director of Labor Relations for CSXT, in which Reed stated that Article 34 prevailed over any rights Minter might have under the ADA. Reed urged Hiel to confirm this position.

In a letter dated January 11, 2000, Hiel wrote Reed stating that he agreed with Reed's interpretation of Article 34 and the ADA. Hiel also stated in his letter that if Minter were to be considered for a position at CSXT in the future, Minter would be a "new hire".

On February 28, 2000, Minter filed a charge of discrimination with the Illinois Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). In a notice dated March 28, 2001, the EEOC notified Minter that his charge had been dismissed. The EEOC also issued Minter a right to sue letter.

## DISCUSSION

Defendants CSXT and the Union have moved to dismiss the complaint, arguing that Minter cannot state a claim upon which relief can be granted because Minter failed to file a charge of discrimination within the 300-day period prescribed in the ADA.

The ADA expressly incorporates the enforcement provisions of Title VII. 42 U.S.C. § 12117(a). In a deferral state, such as Illinois, a party who wishes to file suit under the ADA in federal court must file a charge with the EEOC within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). "The 300-day limit . . . begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows [he] has been injured . . . 'not when [plaintiff] determines that the injury was unlawful.'" *Sharp*, 236 F.3d at 372 (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)) (internal citation omitted).

Defendants argue that there was no alleged unlawful employment practice by the Defendants against Minter during the 300-day period before he filed his charge. Therefore, Defendants argue, Minter's claims are barred as untimely.

Minter resigned from his position at CSXT on February 16, 1998; and his attempt to rescind his resignation was refused on February 18, 1998. Minter filed his charge of discrimination on February 28, 2000, more than two years after CSXT refused to reinstate him and the Union refused to help him.

Minter argues that his claim is timely because the Defendants' denials of his requests for reinstatement with full seniority were allegedly unlawful employment practices that occurred during the 300-day period prior to his EEOC filing on

5

February 28, 2000. Minter also contends his complaint is timely because there was a continuing violation. *See Place v. Abbott Labs.*, 215 F.3d 803, 807 (7th Cir. 2000).

Minter contacted CSXT twice, asking to be reinstated: once on February 18, 1998, and again on January 27, 1999. CSXT only responded to Minter's first request at that time. The action by CSXT that injured Minter occurred on February 18, 1998. CSXT's refusal to reinstate Minter with full seniority does not fall within the 300-day period.

Minter first sought the Union's assistance in obtaining his reinstatement with full seniority on February 18, 1998. At that time, the Union told him that it could not help him because of Article 34 of the CBA. The Union contacted Minter twice during the 300-day period: November 1, 1999 and December 30, 1999. The actions by the Union that occurred during the 300-day period are merely restatements of the Union's original decision on February 18, 1998. *See Lever v. Northwestern Univ.*, 979 F.2d 552, 555 (7th Cir. 1992).

In *Lever*, the plaintiff, a sociology professor, was denied tenure and given a final year of employment in a letter from the dean of the college on May 5, 1980. After several reviews of the decision to deny plaintiff tenure, the provost notified the plaintiff in a letter on February 12, 1981, that the dean's decision would not be reversed. The plaintiff filed her charge of discrimination with the EEOC on June 15, 1981. *Lever*, 979 F.2d at 553. The timeliness of the plaintiff's charge turned on whether the letter of May 5, 1980 or the letter of February 12, 1981 was the unlawful employment practice. *Lever*, 979 F.2d at 553. The Seventh Circuit held that the alleged unlawful employment was the

dean's letter of May 5, 1980, because the dean had the power to deny tenure and his decision was final. *Lever*, 979 F.2d at 554-55.

> An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination. If it were, then an employee could avoid the 300-day limit by filing a series of appeals or fresh requests; [*Delaware State College v.*] *Ricks*[, 449 U.S. 250 (1980),] and *Chardon* [*v. Fernandez*, 454 U.S. 6 (1981),] held that adverse decisions on appeals do not re-start the time for filing a charge.

*Lever*, 979 F.2d at 555.

Therefore, in the instant case, the Union's decision on February 18, 1998, was a final one. Article 34 of the CBA denied reinstatement with full seniority to yardmen or switchmen who voluntarily resigned. Minter was just such a person. Thus, the action by the Union that injured Minter occurred on February 18, 1998, well outside the 300-day period. The Union's continued persistence in its denial of Minter's request for assistance cannot be found to constitute fresh discriminatory acts that re-start the time for filing a charge. *Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1306 (7th Cir. 1998); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir. 1997).

Minter also asserts that the conduct of the Union was a continuing violation of the ADA; and, therefore, his EEOC charge was timely.

Under the continuing violation theory, Minter can get relief for the discriminatory acts that occurred outside the 300-day period if he can allege a "link[] . . . as one continuous act" with a discriminatory act that occurred during the 300-day period. *See Place*, 215 F.3d at 807. "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its

7

character as a violation did not become clear until it was repeated during the limitations period." *Place*, 215 F.3d at 807.

There are three types of continuing violations: (1) "where the exact day of the violation is difficult to pinpoint because the employer's decisionmaking process takes place over a period of time", (2) "where the employer has a systematic, openly espoused policy alleged to be discriminatory", and (3) "where the employer's discriminatory conduct is so covert that its discriminatory character is not immediately apparent." *Place*, 215 F.3d at 808 (citing *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992)). "If, however, the plaintiff 'knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed' . . . [him], the plaintiff must sue over the act within the regular statute of limitations." *Place*, 215 F.3d at 808 (quoting *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281-82 (7th Cir. 1993)).

As discussed above, Minter has not alleged a discriminatory act by CSXT that occurred within the 300-day period. This is a prerequisite under any of the three continuing violation theories. *See, e.g., EEOC v. North Gibson Sch. Corp.*, 266 F.3d 607, 617 (7th Cir. 2001) ("[T]he continuing violation doctrine does not apply when a time-barred incident cannot be linked with an incident that occurred with the statutory period or when the time-barred incident alone should have triggered the plaintiff's awareness that his rights had been violated.") (citing *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 875-76 n.1 (7th Cir. 1999)). Therefore, the claims against CSXT must be dismissed.

Minter has set out another theory regarding alleged actions by the Union within the 300-day period. Minter argues that the Union has an express, openly espoused, discriminatory policy that was in effect during the limitations period. Specifically,

Minter argues that Article 34 facially discriminates against disabled persons by barring them from applying for reinstatement with full seniority. "The Supreme Court has explained that a facially discriminatory policy discriminates each time that it is applied." *North Gibson Sch. Corp.*, 266 F.3d at 617 (citing *Lorance v. AT&T Techs., Inc.*, 490 U.S. 900, 912 & n.5 (1989)). Therefore, Minter argues, each time the Union invoked Article 34 of the CBA against him was a fresh act of discrimination by the Union. Thus, there was a continuing violation. This argument, of course, assumes that the Union "applied" such a policy by simply persisting in the final decision of February 18, 1998.

Even assuming this theory, the question remains as to whether there exists a facially discriminatory policy. The determination of whether Article 34 of the CBA is facially discriminatory turns on interpreting the CBA. The Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* (2001), governs disputes over an interpretation of a CBA.

The RLA "'provid[es] a comprehensive framework for resolving labor disputes' in the railroad industry." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001) (citations omitted). The RLA provides a mandatory arbitration mechanism for "major disputes" and "minor disputes". 45 U.S.C. § 151a.

A dispute regarding the "formation of collective bargaining agreements or efforts to secure them" is a "major dispute". *Brown*, 254 F.3d at 658 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)). A "'minor' dispute[] 'grow[s] out of grievances or out of the interpretation or the application of agreements covering rates of pay, rules, or working conditions.' . . . Minor disputes involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'"

*Hawaiian Airlines*, 512 U.S. at 252-53 (citations omitted). "Minor disputes" must be resolved under RLA mechanisms. *Brown*, 254 F.3d at 658 (citation omitted).

A claim is a "minor dispute" and subject to the RLA's mandatory and exclusive arbitration mechanisms if the resolution of the claim requires interpretation of the CBA. *Brown*, 254 F.3d at 658. "[E]ven if [the plaintiff's] claim is grounded upon rights which stem from some source outside the CBA . . . , the claim will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively resolved' by interpreting the CBA." *Brown*, 254 F.3d at 658 (citations omitted).

Minter's claim is a minor dispute. Minter argues that Article 34 "does not address . . . situations where there is doubt as to whether the resignation may seem to be of the employee's own accord, but is not, due to a medical impairment. As applied by the defendants, it is irrebuttably presumed that all resignations are voluntary." (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 6.) The resolution of Minter's claim would require interpretation of the CBA. The Court lacks subject-matter jurisdiction to do so under the RLA. Therefore, Minter's claim against the Union is dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, Defendant CSX Tranportation's Motion to Dismiss [6-1] is granted and Defendant United Transportation Union's Motion to Dismiss [7-1] is granted.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: January 24, 2002